UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RAMON SANTANA, : CIVIL ACTION NO. 3:CV-12-0125
:
    Petitioner : (Judge Nealon)
:
v. :
:
WARDEN B.A. BLEDSOE, :
:
    Respondent :

## MEMORANDUM

Ramon Santana, an inmate currently confined in the Lewisburg United States Penitentiary, Lewisburg, Pennsylvania, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1, petition). Petitioner claims that his due process rights were violated during the course of a prison disciplinary hearing held on September 21, 2011, where he was found guilty of the prohibited act of Threatening Bodily Harm and Refusing a Direct Order, violations of Disciplinary Code Sections 203 and 307. Id. Specifically, he alleges false statements were introduced and relied upon by the Disciplinary Hearing Officer (DHO); staff assistance was provided in bad faith; and the DHO did not consider his conspiracy, coercion, or duress defenses. Id. For relief, Santana requests the Court grant his petition and "ascertain the facts . . . discharge [Santana] from the illegal restraint . . . and for such other relief to which applicant is entitled." Id. The petition is ripe for disposition and, for the reasons that follow, will be denied.

**Background**

On August 1, 2011, Petitioner was served with Incident Report No. 2192748 charging him with "Threatening Bodily Harm and Refusing an Order", a Code 203, and 307 violations. (Doc. 10, Att. 2, Incident Report). The incident report, which was written by M. Hess, S.O., reads

as follows:

> On August 1, 2011, at 10:15 a.m., [S.O. Hess] was about ready to handcuff Inmate Santana (17036-069) to take him back to his cell. The inmate refused to submit to hand restraints. The inmate stated he was not going back into his cell no matter what! [S.O. Hess] then gave the inmate several direct orders to submit to hand restraints. The inmate did not comply. The inmates then stated to [S.O. Hess] "if you put me back into that cell I'm going to kill inmate Polanco so do what you gotta do!"

Id. On August 3, 2011, Petitioner appeared before the Unit Discipline Committee ("UDC"). See Id., Committee Action. The UDC referred the charge to the Discipline Hearing Officer ("DHO"). Id. During the UDC hearing, staff member, M. Edinger, informed Santana of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. Id. at 5, Inmate Rights at Discipline Hearing. Inmate Santana refused to sign the Inmate Rights at Discipline Hearing form, acknowledging that he received it. Id.

Also on August 3, 2011, Santana was provided with a "Notice of Discipline Hearing before the (DHO)" form. Id. at 4. Santana waived his rights to have a staff member represent him and to call witnesses, and, again, refused to sign the form. Id.

On September 21, 2011, Petitioner appeared for a hearing before DHO, A. Jordan. Id. at 7, DHO Report. During the DHO hearing, Petitioner was again read his rights, and he indicated that he understood them. Id. The DHO confirmed that Santana received a copy of the incident report, and that he did not want a staff representative, or to call witnesses. Id. However, because Santana requested an interpreter, Officer Argueta appeared on his behalf. Id.

Petitioner offered the following statement on his behalf:

"Need interpreter. I know I am wrong. I am asking for the incident report to be put over my head/put on the shelf. I am programming and have been complying ever since. Also I will not give or cause any trouble. I do not speak English.

2

Please bring an interpreter."

Id. Santana also stated section II of the incident report was inaccurate because he did not threaten anyone, but admitted he refused to go into a cell with inmate Polanco. Id. Santana further stated that he could not be held responsible if he could not speak English and the reporting officer could not have known what he said because he does not speak English. Id. Santana did not raise any procedural errors at the time of the hearing. Id.

The documentary evidence which the DHO considered in making his determination included: (1) incident report, written by Officer Hess; (2) Memorandum dated August 1, 2011, from C. Rothermel, CO, corroborating the report by the reporting officer; and (3) written statement provided by inmate Santana at DHO hearing. Id. at 8. The specific evidence taken from the relied upon documentary evidence was as follows:

> The DHO finds you committed the prohibited act code 203, Threatening Another with Bodily Harm, while incarcerated at USP-Lewisburg on 08-01-2011, at approximately 10:15AM, when you threatened to harm your cell mate.
>
> The DHO relied on the written report of M. Hess, S.O., wherein he reports on 08-01-2011 at approximately 10:50 AM he was ready to handcuff you to take you back to your cell. You refused to submit to hand restraints. You stated you were not going back into you cell no matter what! He gave you several direct orders to submit to hand restraints. You did no comply. You then stated to him, "if you put me back into that cell I am going to kill inmate Polanco so do what you got to do!"
>
> The DHO also relied on the Memorandum of C. Rothermel, CO, dated 08-01, 2011, prepared with regard to your actions following the incident. The Officer's statements corroborate the report by the reporting officer you made threats of imminent violence.
>
> The DHO also relied on the written statement you provided which states, in part, "I know I am wrong. I am asking for the incident report to be put over my head/put on the shelf. I am programming and have been complying ever since. Also I will not give or cause any trouble." This statement is interpreted by the

3

DHO as your adverse inference you committed the prohibited act.

You denied the charge, and presented as your defense you did not threaten anybody. You admit refusing to go back in the cell with inmate Polanco. You claim you are unable to understand or speak English and the staff involved were unable to communicate is Spanish. The DHO gave greater weight to the reporting officer's written statement that you made verbal threats, than to your claim you do not speak English and did not make a threat.

The DHO's finding is based on the following: The DHO considered your verbal testimony you provided, in which you admitted, "refusing to go back into the cell with Polanco". The DHO considers this testimony as your attempt to minimize your conduct, and substantiate a less serious prohibited act, to avoid the consequences of your actions. More specifically, you stand to avoid being sanctioned for misconduct which you know to be High severity in nature, and would likely result in stringent sanctions being imposed in accordance with inmate discipline policy. It is crystal clear to the DHO you made threatening statements to the officer, as he was very specific in his report of he incident; Officer Rothermel's written statement corroborates the reporting officer's account that you made threatening statements to avoid going back into the cell with inmate Polanco; Inmate Polanco has an extensive history of fighting with, and assaulting cellmates. The DHO is convinced you would have communicated, by whatever means, your threat of imminent violence in order to avoid our placement back into you assigned cell, and to avoid a possible confrontation with inmate Polanco; the DHO has considered your testimony where you claim you were unable to speak or understand English. The DHO is not convince you are being completely truthful. During the DHO hearing you were observed by the DHO listening and reacting to staff conversations which were spoken in English; the DHO considered your written statement where you stated, "I know I am wrong", as you admission to the commission of the prohibited act. This once again gives greater weight to the officer's statement you made the threatening statements; Finally, the DHO contends your threatening conduct was serious enough to warrant your placement into ambulatory restraints. If your testimony that the threatening statements attributed to you in Section 11 of the incident report were completely fabricated by the reporting officer in order to justify placing you into ambulatory restraints without reason is to be believed, then the DHO would have to accept as fact that the reporting officer fabricated by the reporting officer in order to justify placing you into ambulatory restraints without reason is to be believed, then the DHO would have to accept as fact that the reporting officer fabricated a significant part of Section 11 of the incident report. Staff found to have engaged in fabrication or falsification of official government documents would risk losing employment with the Federal Bureau of Prisons as a result of

4

> violating the Standards of Employee Conduct. Therefore, the reporting officer has his livelihood to lose, and absolutely nothing to gain, by fabricating or falsifying the incident report in this case. Moreover, if your testimony is to be believed, then the DHO would also have to accept as fact that multiple staff members, including the calculated use of force team members, medical staff present for the calculated use of force, and staff performing confrontational avoidance during the calculated use of force, engaged in a relatively wide-ranging conspiracy (in that at least nine staff members, in addition to the reporting officer, would have to have been involved) to fabricate or falsify official government documents simply to place you in ambulatory restraints without justification, as you contend. The DHO cannot accept as fact that these Bureau of Prisons staff members would risk their employment with the Federal Bureau of Prisons, as well as possible criminal charges, simply to place you in ambulatory restraints without justification as is your contention. You, however, stand to gain by being less than completely honest regarding the facts of the incident. More specifically, you stand to avoid being sanctioned for misconduct which you know to be High severity in nature, and would likely result in stringent sanctions being imposed in accordance with inmate discipline policy.
>
> Based on the officer's statement that you made threatening statements, the supporting memorandum which further documents your threat of imminent violence, and your admission where you stated, "I know I am wrong", the greater weight of the evidence supports you violated code 203, Threatening Another with Bodily Harm, of the Inmate Discipline Policy.

Id. The DHO sanctioned Petitioner to disallowance of twenty-seven (27) days good conduct time; thirty (30) days disciplinary segregation; ninety (90) days loss of commissary privileges; ninety (90) days loss of visiting privileges; and ninety (90) day loss of telephone privileges Id. The DHO documented his reasons for the sanctions given as follows:

> Threatening others in a correctional institution inherently jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed Conduct Which Disrupts, most like Threatening others with bodily harm in a correctional institution inherently jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to

> demonstrate that engaging in misconduct will prolong inmate Santana's period of incarceration. Loss of commissary, telephone and visiting privileges is imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated.

Id. Santana was advised of his appeal rights at the conclusion of the hearing. Id.

## Discussion

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether

6

there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq., and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC hearing is ordinarily held within five work days after the incident report was issued, not counting the day it was issued, weekends and holidays. See 28 C.F.R. § 541.7(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(g). The DHO shall give the inmate a written copy of the decisions following its review of the incident report. 28 C.F.R. § 541.7(h).

In the instant case it is clear that Santana was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own

7

statement, present documentary evidence, have a staff representative[1], and to present witnesses on his behalf. Petitioner chose only to make a statement, which was documented in the DHO's report. Petitioner also received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Petitioner was then notified of his right to appeal.

Since Santana was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of specific documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. Specifically, he relied upon the written report of Officer Hess, the memorandum of Officer Rothermel, and Santana's own written statement. The DHO also discussed Santana's claim that he could not understand English and found Santana to be less than truthful. The DHO indicated that he observed Santana reacting to conversations by staff members that were speaking in English, the fact that Santana submitted a written statement, and that both officers involved in the incident reported Santana spoke English during the incident.

Although Santana alleges the DHO relied on "false statements" and failed to consider his defenses of "conspiracy, duress, and coercion," the DHO addressed Santana's claims in his findings. Specifically, the DHO discussed that Santana's claim that Section II of the incident report was fabricated. The DHO opined that for Santana's defense to be accurate, no less than nine federal officers would have to be lying and falsifying government documents for the sole purpose

---

[1]To the extent that Petitioner claims that his due process rights were violated because his staff assistant did not act in good faith, such argument is without merit. Santana waived his right to staff representation. Officer Argueta only appeared as an interpreter, not as Santana's staff representative. Thus, any claims Santana has about Officer's Argueta's effectiveness or his "failure to assist" Santana must fail.

of placing Santana in ambulatory restraints with no discernable benefits but a slew of potential negative consequences to include loss of employment and criminal charges. The DHO found the Officer's statements to be truthful and the greater weight of the evidence to be in favor of Santana's guilt despite his conspiracy defense. Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.3(b). Petitioner was found guilty of a 200-level, high severity prohibited act. Pursuant to 28 C.F.R. § 541.3(b), the following are some of the sanctions available for 200-level offenses:

> B.1. Disallowance of good conduct time;
>
> C. Disciplinary segregation (up to 6 months); and,
>
> F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).

28 C.F.R. § 541.3(b). Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO.

Moreover, Pursuant to 28 C.F.R. § 541.3(b), the following are some of the sanctions available for 300-level offenses:

> B.1. Disallow ordinarily up to 25% (1-14) days of good conduct time available for a year (a good conduct time sanction may not be suspended);
>
> C. Disciplinary segregation (up to 3 months); and
>
> F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).

28 C.F.R. § 541.3(b).

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity levels of the prohibited acts and within the maximum available to the DHO. Accordingly, the petition will be denied. A separate Order will be issued.

Dated: August 1, 2013

_____
United States District Judge